Read, J.
In the construction of wills, the intention of the testator must govern, if it be not unlawful or inconsistent with the rules of law. The control over intention, by the rules of law, applies not to the construction of words, but the nature of the estate. A testator may use such words as he may please, to convey his intention; and such intention, if clearly manifested, will be carried into effect, if it be not unlawful, and does not create an estate forbidden by law. A testator has the perfect right to choose his own language, but not to create an estate which the law does not permit. He would have no right to create a perpetuity, or in any sense to break down or violate the fixed principles of property.
If, then, in the case under consideration, it was the intention of the testator to give a life estate only to Christian King, with a remainder in fee to his children, if any, at the time of his death, and a contingent remainder over to his two sisters’ children, Ish and Cassel, it would be perfectly legal, for the estates created are lawful; and the only question would be, has he employed words which manifest such intention?
It is perfectly legal to give a life estate to one and remainder-over in fee to another. If, in the present instance, the testator had devised a life estate to Christian King, with a remainder over to a stranger, and a contingent remainder over, there would have been no doubt about the -will at all; the estates they created would have all been legal, and been carried into effect. The whole doubt and confusion in this case grows out of the employment of the words “ heir or heirs.” If the word children had been used, there would have been no doubt; but it is contended that the word “ heirs ” has a fixed legal mean *562 jng, and is always a word of limitation and not purchase, and hence would bring the estate devised to Christian King and his heirs within the rule in Shelley’s case, and vest the entire fee in Christian. The rule in Shelley’s case is not a rule of construction, but a law of property.- It is not designed to give a meaning to words, but to fix the nature and quantity of an estate. If the estate for life, created in the devisee or donee, is limited precisely as it would descend at law, the rule in Shelley’s case vests the entire fee in the first devisee, or donee. The testator may use the word “ heir,” and take it without its usual, legal sense, if he employ words respecting it to show that he did not use it in its ordinary legal sense; or if the plain intention manifested in the will shows that it was not employed in its usual legal sense. A mere presumed intention will not control its legal signification and operation; but with words of explanation, showing the manifest intent of the testator, it can be made a word of purchase. If, where the word “heir” is used, there be superadded words of limitation, establishing a new succession, the first donee or devisee would take but a life estate. The expressed intent, then, of the testator, will affix the meaning to the word “ heirit is said a mere implication will not.
What then was the intention in this case ? To ascertain this, we must look to the words and the motives of the devisee. We must not start out with the presumption that it was the design of the testator to create an estate tail, and construe the words of the will to effect that object. That was only a family law-in England, designed to build up families,-cheat creditors, and prevent forfeitures, and is in no wise consistent with the spirit and genius of our own government and laws, or the habits and feelings of our people. Our statute forbids it, and such I believe is the case in all, or very nearly all the States in this Union. Nor is there with us any disposition to strain a point to bring a case within the operation of the rule in Shelley’s case, a rule which had its origin in feudal tenure, and was first adopted to secure to the lords the profits and perquisites *563 incident to inheritances; and, as an after thought, the additional reason that it was necessary to prevent an abeyance of the fee. It is at best a mere artificial technicality; and just in proportion as it lacks reason, it appears to have won upon the affections of the profession. In its simplicity, it possesses sóme sense, and to that extent we have adopted it as a rule. of property in Ohio. But it is the high and imperative duty of this Court to conform its judicial decisions, where we attempt to walk by the light of precedent from another country, to the nature of our own government and free institutions.
Throwing aside, then, all presumptions in favor of estates tail, and all peculiar affection for the rule in Shelley’s case, and attempting to arrive at the intention of the testator from the language employed, and the nature of the devises contained in the will, what must we say was the intention of the testator ?
First: “ I will and bequeath all the property I may be pos- £ sessed of before' my decease, to my brother Christian, to be ‘ used by him while he lives.
Second: - “ And if it so please God that, at the time of bro- ‘ ther Christian’s decease, he should be possessed of legal heir ‘ or heirs, born in lawful wedlock, I then will and bequeath all £ and every kind of property which might be considered mine £ in my lifetime, and of which the said Christian máy be seized £ at the time of his decease, to such heir or heirs, and no other.
Third: ££ But, should I myself die without lawful heirs, and £ also my brother Christian die without heirs born lawfully as ‘ above stated, I then will what may be considered my brother’s £ share at my decease, and not before, to my two sister’s children, ‘ Ish and Cassel.”
Now, here is an express estate for life,'by the words of the will, to Christian, and nothing more, and then to his heir or heirs — and if none at the time of Christian’s death, to the children of Ish and Cassel. The limitation of the remainder over to the children of Ish and Cassel, is not to take place on the indéfinite failure of issue of Christian King, but must vest at the instant of Christian’s death, or never. . Now, had the *564 testator intended to devise all his property to Christian King and his heirs, why limit over a contingent remainder to the children of Ish and Cassel ? If he had intended to devise his whole estate in the first instance to Christian, why do so vain a thing' as to limit a contingent remainder over to the children of Ish and Cassel ? If he had intended to use the words “ heir or heirs ” as words of limitation, he knew that the whole estate was vested at once in Christian, and why, therefore, create the contingent remainder over ? But, it may be said, he was ignorant of the rules of law. The presumption is that he knew the law, and that he employed the words “ heirs or heirs ” in such sense as would permit the remainder to vest on the happening of the specified contingency. To give effect, then, to each devise in this will — the express life estate to Christian, and the contingent remainder to the children of Ish and Cassel — the words “ heir or heirs ” must be read, child or children. It has already been stated that the words “ heir or heirs ” may be treated as designatio persona, or as child or children, if the manifest intent of the testator requires it. But it is said that Christian is vested by the wall with the power of disposing of the property. This is not- so said in the will. But it is expressly said it is to be used by him whilst he lives. But it is contended the Words “ seized at his death ” shows that it was not contemplated by William that Christian should have all the property at his death which had been devised to him, and hence that it was contemplated that he might dispose of it. This form of expression may be accounted for in a different way. It might well be supposed by William, that the personalty could be lost in other w'ays than by disposition. To hold that the words “ seized at his death ” carried the implied power of disposition, would defeat other manifest intents — where, to hold that it merely was employed in reference to destruction or loss, would be consistent with, and support every intent expressed in the will. That construction, then, should be employed which is most consistent with the main expressed intention. But the words used, “ for life,” are as strong to express an intention as *565 the words “ seized at the death.” The intention, from the words employed and the nature of the devises clearly was, to give Christian an estate for life, and nothing more — remainder in fee to his children, and contingent remainder over. This withdraws the case wholly from the rule in Shelley’s case, for the estates created are such as the law recognizes.
Hence, as to the realty, Christian took a life estate only, and his children a remainder in fee, as purchasers. So of the personalty, the intent was the same; and remainder over after a life estate in personalty may be limited by devise. Hence in this, also, the children of Christian King take the remainder as purchasers.
To adopt ah opposite construction would be to conclude that the testator intended that the property devised should go to pay the debts of Christian. This, in view of the words of the will and the devises, would be doing violence to the whole will. It is said creditors may be wronged if the children of Christian King take this property. We cannot perceive how. We know of no equity which should enable them to seize upon the. bounty of a testator and apply if to the payment of the debts of another person. It is not the property of the debtor, and the equities of the devisees are equally strong.
We have no doubt that there was error in the decrees heretofore pronounced, and therefore reverse them.
A vast multitude of books and authorities have been cited in this case. I have not cited them expressly in my opinion. I am content to extract the essence, and do not choose to become a compiler.

Decree Reversed.